JESÚS, RESPONDENT, *v.* SUCCESSION OF PÉREZ VILLAMIL, APPELLANT.

## APPEAL from the District Court of San Juan, Section 1

No. 927.—Decided June 27, 1913.

NATURAL CHILDREN—ACTION FOR ACKNOWLEDGMENT—CONTINUOUS POSSESSION OF STATUS OF NATURAL CHILD — EVIDENCE. — Among other facts the plaintiff proved that Ramón Pérez Villamil, ancestor of the defendant succession, called her "daughter" and she called him "papa;" that she frequently sought his blessing and he gave it; that at the time of the conception and birth of the plaintiff said Pérez Villamil sustained sexual relations and lived publicly in concubinage with the mother of the plaintiff; that he supported her and provided for her necessities; that she had several other children by him and said attentions continued for six or seven years. *It was held:*

1. That the evidence offered was sufficient to prove that the plaintiff is the natural daughter of Ramón Pérez Villamil and that publicly and privately and by direct acts he acknowledged her as such.

2. That the fact that Pérez Villamil supplied the necessities of the plaintiff and her mother for a period of six or seven years is sufficient *prima facie* evidence of her continued possession of the legal status of natural child, which, in case of being contradicted by the defendant, casts upon him the obligation of proving the contrary.

3. That the fact that a natural child fails to ask her putative father for permission to marry before having acquired the complete legal status of acknowledged natural child does not destroy the efficacy of the acts of acknowledgment performed by the natural father before or after said marriage, nor does it affect the continuity of possession of the status of natural child.

4. That the lower court having decided certain conflicting evidence in regard to various acts alleged and proven by the plaintiff in favor of said plaintiff, there is nothing in the record showing passion, partiality, prejudice or grave error on the part of the trial judge to justify our reversing the conclusion reached by him.

5. That as there was sufficient evidence to show the acts of acknowledgment performed by the father of the plaintiff, the trial court was under no obligation to believe the witnesses who sought to prove that at the time of the birth of the plaintiff her mother sustained relations with other men, although such testimony was not contradicted or assailed by other evidence or by the facts or circumstances of the case.

The facts are stated in the opinion.

*Messrs. Bosch* and *Soto* for appellant.

*Mr. José G. Torres* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

The facts alleged in the complaint, which bore date July 14, 1911, are as follows:

*First.* That the complainant was born in the town of Río Grande on January 19, 1890, and hence was an adult, and that she was a resident of the district.

*Second.* That the defendant succession was composed of the widow of Pérez Villamíl, Josefa Romano Cestari, and the legitimate children, Rosa, José Ramón, and Lina, all residing at Río Piedras of this district.

*Third.* That in his sexual relations with Francisca de Jesús the said Ramón Pérez Villamil begot the complainant, who was always publicly and privately held to be his daughter by the said Ramón Pérez Villamil, and that at the time of the conception and birth of the complainant her said parents were single and capable of marrying.

*Fourth.* That Ramón Pérez Villamil died on April 16, 1911, and the complainant asked for a judgment adjudging her to be the natural acknowledged daughter of Ramón Pérez Villamil with the right to the benefits accorded her by the Civil Code.

The facts favorable to the complainant having been denied by the defendants the case proceeded to trial and the trial judge found the facts in favor of the complainant as alleged in the complaint, and more specifically found that at the time of the birth and conception of the complainant Ramón Pérez Villamil had sexual relations and lived publicly in concubinage with Francisca de Jesús, having gone to Spain before the birth of the complainant and having returned after such birth, without having interrupted his amorous relations with the said Francisca de Jesús; that María de Jesús was always publicly and privately held by Ramón Pérez Villamil to be his natural daughter, enjoying the condition (*estado*) of such natural daughter, and having justified the possession of such

condition by the direct acts of the said Villamil and of his family.

The parties and the court agree upon the fact that as the complainant was born on January 19, 1890, the question of her acknowledgment must be governed by the provisions of section 135 of the Spanish Civil Code which provides as follows:

"The father is obliged to acknowledge the natural child in the following cases:

"1. When an indisputable paper written by him, expressly acknowledging his paternity, is in existence.

"2. When the child is in uninterrupted enjoyment of the status of a natural child of the defendant father, justified by direct acts of the said father or his family."

This is a case where nothing in the record or the evidence reveals passion, partiality, prejudice, or grave error on the part of the trial judge in reaching his findings, and hence all the testimony to support them must be given its due weight unless it is inherently incredible. There were numerous witnesses who testified to the public concubinage that existed between the parents of the complainant. The appellants substantially concede that at least two other children were born of the same parents. They, however, maintained and attempted to show at the trial that María de Jesús had a different origin. The evidence also showed that Ramón Pérez Villamil for six or eight years at least after the birth of the complainant performed acts from which the acknowledgment of complainant may be inferred; of this there is abundant proof independently of the testimony of the complainant and of Isabel, Rosa and Ramón de Jesús, the sisters and brother of the complainant. The court was in nowise bound to believe the witnesses who attempted to prove that at the time of the birth of her daughter, María, Francisca de Jesús had relations with other men, even if the assertions of such

witnesses were not contradicted or disproved by other testimony and other facts and circumstances in the case.

All the questions in the case may be disposed of on the ground of the conflict of the proof, but there is one which merits a closer examination of the facts. The appellants say that even though there were isolated acts on the part of the father tending in some degree to show his acknowledgment of the complainant, there was not enough evidence to show the possession of that continuous condition (*estado*) of a natural child justified by his direct acts or of his family. There was evidence tending to show that María de Jesús called Ramón Pérez Villamil "papa" and that he called her "daughter"; that she frequently sought his blessing and that he gave it; that it was a public fact that she called him "papa"; that milk was carried to the house of Francisca de Jesús at the order of Ramón Pérez Villamil and that these and other acts continued until María was six or seven years old; that her alleged father was affectionate to her not only before, but after her marriage, and there was other testimony to the same general effect. If these facts stood alone or there were even more of a similar character, we might, perchance, agree with the appellants that the continuous possession of the status of a natural acknowledged child, evidenced by direct acts of the father, would not be shown, for these manifestations may be said to show nothing more than the kindly acts of a man to a child he saw about him, and she might have called him "papa" because she heard others call him so and he might have tolerated this behavior from a young child. Such course of conduct, too, might have been pursued by him without any intention of acknowledging the child even if he was convinced that it was his own. He might have been willing at first to acknowledge her but afterwards changed his mind. But there were other facts and circumstances in the case.

The first of these is the practically undisputed fact that Ramón Pérez Villamil had sexual relations with Francisca

de Jesús and that she had given birth to other children as the result of these relations. Furthermore, we see no reason to doubt the finding of the court that these relations continued up to and after the birth of María. We are convinced that Ramón Pérez Villamil was her father. This conclusion flows from the whole evidence. Francisca de Jesús, the mother of María, lived a few meters away from the house of Ramón Pérez Villamil and there can be very little doubt that he supported her or contributed to her support even after the birth of María. With respect to two of her children, namely, Isabel and Ramón, it is virtually conceded that they possessed that continuous condition of natural children as required by section 135 of the Civil Code. As to Isabel the proof is even stronger. She entered the house of Ramón Pérez Villamil after his marriage. She was godmother to one of the legitimate children of Ramón Pérez Villamil, and one of the legitimate children of Ramón Pérez Villamil stood as godmother to a child of Isabel. Isabel was married in her father's house. Under these circumstances, considering the relations that existed between Ramón Pérez Villamil on the one side and Francisca, Isabel, and Ramón on the other, very little additional evidence would be required to show that there were direct acts of Ramón Pérez Villamil with regard to María, as required by section 135 of the Spanish Civil Code.

But the evidence was even stronger than we have recited. Not to mention for the moment Isabel, María, Ramón, and Francisca de Jesús, or other witnesses who might be interested or prejudiced, there was testimony tending to show that María in her early years frequented the house of her father; that she ate there; that she played there and took excursions with the legitimate children of Don Ramón. One of these witnesses was the doctor who assisted at the birth of María and who testified that he did so at the request of Don Ramón and that he was frequently at the house and that there Ramón treated María as his own child; that the relations continued

after María was older and even after she was married, both María and Isabel visiting the house of their father. There was testimony of other witnesses to the same effect.

We have been considering the evidence up to this point without taking into account the disputed testimony of Francisca de Jesús and her children.

However, María, Isabel, Ramón, and Francisca de Jesús also testified. They are impugned, if at all, only on the ground of interest and by the contradictory testimony of the defendants. The judge was entitled to believe any or all of them and we see nothing inherently improbable in their testimony. Their declarations tended to show direct acts of the father and of his family extending over María's entire life. Isabel also testified that she saw her father at the time of his last illness and that he asked for María, who could not come on account of being in a family way. The defendants admitted that Isabel came to the house, but they denied that she saw her father. On the matter of credibility we see no more reason for disbelieving the testimony of the complainant's witnesses than of the defendants.

Appellants laid some stress upon the fact that María attempted to communicate by letter or otherwise with her father at the time of her marriage to ask his permission, and that he did not reply. His failure might have numerous other explanations than the non-existence of the continuous relation of natural father and child. He might have not been pleased with her or with the marriage. We do not understand that a father's consent to marry is necessary to a child who has not acquired the full status of a natural acknowledged child, but in any event, as stated in the case of *Amsterdam et al.* v. *Puente et al.*, 16 P. R. R., 527, the failure to acknowledge at a particular instant could not destroy the force of the antecedent and subsequent acts of the father or the previous possession of status.

We also think that if a complainant can show clear acts extending over a period of six and seven years, that he has

made out a *prima facie* case of the continuous possession of the status of a natural child and that the burden of proof would shift to the defendant to show the fact to be otherwise.

We find no error in the record and the judgment must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.